**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-mj-423 (WBP)** |
| | ) | |
| **IAN BRINKSMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MR. BRINKSMAN'S MOTION FOR RELEASE PURSUANT TO 18 U.S.C. 3142(c)

Pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, defendant Ian Brinksman respectfully requests that the Court release him from detention pending trial. Based on the information in the Pretrial Services Report, Mr. Brinksman's unblemished record and substantial connections to the community, a review of many similar (and often more aggravated) cases in which defendants have been released pretrial, and the presumption in this case that conditions of release exist that will reasonably protect the community and assure Mr. Brinksman's appearance as required, the Court should order release pending trial in this matter.

There is no dispute that Mr. Brinksman has extensive ties to this area. As confirmed in the report from Pretrial Services, Mr. Brinksman has lived in the metropolitan area for nearly two decades. He has gone to both undergraduate and graduate school in the Washington, DC, area, has been employed here, has lived here, and has an approved third-party custodian with a stable residence in Maryland. He has no prior record of any sort, no mental health or substance abuse history and is in the lowest PTRA category, demonstrating a 95% risk of success on pretrial release.

Indeed, the Pretrial Services Office recommend release on conditions and the Bail Reform Act places the burden on the government—which it has not met—to establish that no condition or combination of conditions can reasonably assure the defendant's appearance as required and the safety of the community.

For all of these reasons, Mr. Brinksman submits that release on the conditions recommended by the Pretrial Services Office—or on any additional conditions the Court deems appropriate—will reasonably assure his appearance and the safety of the community, and that he should be released on such conditions.

## BACKGROUND

On October 23, 2026, Mr. Brinksman was arrested on a Criminal Complaint charging him with transmission of national defense information, in violation of 18 U.S.C. § 793(d) (a class C felony with a maximum sentence of ten years), to a person with whom he has been in a romantic relationship. *See* Dkt. No. 1, 2. When FBI agents arrived to search his home and arrest him, he was cooperative and was taken into custody without incident.

A violation of § 793 is a Class C felony with a maximum sentence of ten years. At his initial appearance on October 23, 2026, the Court ordered Mr. Brinksman temporarily detained pending a detention hearing. The government has moved for

his detention pending trial, citing both danger to the community and risk of flight. *See* Dkt. No. 13 at 11, 13.

## LEGAL STANDARDS

As the Supreme Court has emphasized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, the Bail Reform Act (specifically, 18 U.S.C. §§ 3142(a) and (b)) requires that a person charged with an offense be released on personal recognizance or upon execution of an unsecured bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. The Act permits pretrial detention only if no condition or combination of conditions exists that would provide that reasonable assurance. 18 U.S.C. § 3142(e). The sole exception to the presumption in favor of release is the list of so-called "presumption" offenses, where the burden is on the defense to rebut the need for detention. The offense at issue here is not on that list, and in any case, the burden of persuasion always rests with the government.

Specifically, to secure pretrial detention, the government must prove either: (1) by clear and convincing evidence, that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (citing 18 U.S.C. § 3142(f)(2)); or (2) by a preponderance of the evidence that no conditions will reasonably assure the appearance of the defendant at future court proceedings, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). *See* 18 U.S.C. §3142(f); *United States v. King*, 849 F.2d

485, 489 (11th Cir. 1988). The Bail Reform Act contemplates only that a court be able to "reasonably assure," rather than guarantee, the safety of the community. *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008). Moreover, the government must show inclination to flee, as opposed to the mere opportunity, in order to support pretrial detention based on risk of flight. *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978).

The factors the court must consider in evaluating whether to detain or release a defendant are listed in the Bail Reform Act: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics, including the person's character, physical and mental condition, family ties, employment, financial resources, community ties, drug abuse history, and criminal record; and (4) the danger to the community posed by the person's release. 18 U.S.C. § 3142(g); *see also United States v. Singh*, 860 F. App'x 283, 284 (4th Cir. 2021).

## **ARGUMENT**

This is not a so-called presumption case. As such, the law favors release. Indeed, the Bail Reform Act *requires* release in such cases, unless the government can prove that "no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any other person or the community." *Id.* § 3142(a), (c), (e).

Here, the government cannot meet that standard. To be sure, the allegation in this case is serious, and will be considered by a Court at sentencing should the

government secure a conviction. But the government's request for pretrial detention essentially focuses solely on that factor as its basis for detention and does so in a way that would effectively mandate pretrial detention in all cases charging this offense—because all such defendants *could* "leverage [their] knowledge of classified information as currency" to harm the nation or flee, *See* Dkt. No. 13 at 13. But that contravenes the Bail Reform Act because this is not a presumption case. Even were this a presumption case—which it is not—pretrial detention would only become a rebuttable presumption rather than mandatory, as the government's argument would make it. Moreover, a review of cases involving similar facts and charges, including in this district, reveals that pretrial release is common in such cases.

In a case with similar facts, for example, a retired four-star General and CIA Director disclosed Top Secret/SCI and codeword-classified information to an acquaintance (reportedly a romantic partner) who was writing a book about him. *See United States v. Petraeus*, W.D.N.C. No. 3:15-cr-47. The information he disclosed was substantially more sensitive than anything thus far alleged here, and included the identities of covert officers, notes of discussions with the President, and deliberative materials from National Security Council Meetings. Unlike the instant case, Mr. Petraeus was never arrested—rather, the investigation and plea discussions unfolded while he was out of custody, and the case was eventually resolved as a misdemeanor in which he admitted all of the above facts (which are plainly sufficient to establish a

§ 793(d) charge).[1] *See also United States v. Hale,* E.D.Va. No. 1:19-cr-59 (defendant released on conditions in § 793(d) case involving release of information to reporter regarding drone program); *United States v. Frese*, E.D.Va. No. 1:19-cr-304 (DIA analyst who shared information with two journalists, one of whom he was dating, released in § 793(d) case); *United States v. Nirala*, E.D.Va. No. 1:16-cr-124 (NGA employee released in § 793(e) case); *United States v. Pho*, D. Md. No. 1:-17-cr-631 (NSA employee released in § 793(e) case where, according to DOJ, he "removed massive troves of highly classified national defense information without authorization and kept it at his home"); *United States v. Unkenholz*, D. Md. No. 1:22-cr-105 (NSA senior executive accused of transmitting national defense information to private company by email released in § 793(e) case).

The government's request for detention in this case is not grounded in the law or in facts specific to Mr. Brinksman. Rather, the government imagines a parade of horribles and posits that, just because Mr. Brinksman is alleged to have committed the offense in this case, no conditions exist that can reasonably assure his appearance and the safety of the community—including from crimes far worse than he is alleged

[1] Indeed, General Petraeus is not the only high-profile defendant released in a case involving classified information. In *United States v. Trump*, et al., S.D. Fl. 23-cr-80101, the lead defendant was charged with violating 18 U.S.C. § 793(e) for improperly retaining a trove of classified information and with obstruction of justice in relation to the investigation of the § 793 offense). The defendant, who at the time had two other pending felony cases, was released on a personal recognizance bond and remained on release even after felony conviction in other case). Similarly, former FBI Director James Comey is currently charged with violating § 793(d) in a case pending in the Federal District Court for the District of Columbia, while he is on pretrial release in another federal criminal case, but has not been detained. *See* D.D.C. No. 1:26-cr-229.

to have committed, such as transmitting the names of intelligence assets to a foreign adversary to secure his flight. *See* Dkt. No. 13 at 12-13. That mode of analysis flies in the face of the Bail Reform Act because it effectively transforms § 793 into a presumption offense (and, indeed, into effectively a mandatory-detention offense). Congress, however, has chosen to classify § 793 as a non-presumption offense in which the presumption is in favor of release. Moreover, even assuming the facts in the Affidavit to be true, they do not establish an inclination to commit even worse conduct that nothing in the record suggests Mr. Brinksman is inclined to commit. The Bail Reform Act does not permit detention based on conjured theories of what a hypothetical defendant might possibly do—rather, it requires the government to establish, by clear and convincing evidence in the case of dangerousness, that such a danger exists and that no combination of conditions can reasonably mitigate it.

Here, the conditions this Court must consider under the Bail Reform Act support release. With respect to Mr. Brinksman's history and characteristics, including his character, physical and mental condition, family ties, employment, financial resources, community ties, and lack of any drug abuse or criminal history, there is no information in the record that would support detention. As already noted, there have been no prior arrests or interactions with law enforcement of any kind, there is no evidence of drug abuse or mental health history, and there is a long and stable record of employment and community ties. Regarding the final factor (the danger to the community posed by the person's release), the only evidence the government can rely on to meet its burden would be the allegations in this case.

Those allegations, while serious, do not indicate that Mr. Brinksman poses either an inclination to flee or a continuing risk to the community. Moreover, any risk can be mitigated by the imposition of the release conditions recommended by the Pretrial Services Office or more stringent conditions should the Court deem it necessary

In sum, the Court should begin with the presumption that Mr. Brinksman should be released and consider whether the government has not only overcome that presumption but shown that none of the conditions of release available to the Court are sufficient to reasonably assure both Mr. Brinksman's appearance and (by clear and convincing evidence) the safety of the community. Because the government cannot meet its burden on either ground, the defense respectfully submits that the Court should release Mr. Brinksman, subject to the conditions recommended by the Pretrial Services Office and any others the Court deems appropriate.

Respectfully submitted,

IAN BRINKSMAN

By Counsel:

Geremy C. Kamens
Federal Public Defender

By: /s/

Todd M. Richman, VA Bar No. 41834
Lauren E.S. Rosen, VA Bar No. 98540
Assistant Federal Public Defenders
Counsel for Mr. Brinksman
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
todd_richman@fd.org